# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | | |
|---|---|---|
| KATHY THOMAS, | ) | |
| Plaintiff, | ) | Case  No. CV 09-1856 AJW |
| | ) | |
| v. | ) | MEMORANDUM OF DECISION |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

### Administrative Proceedings

The procedural facts are summarized in the Joint Stipulation. [JS 2]. In a March 12, 2009 hearing decision that constitutes the Commissioner's final decision in this matter, an administrative law judge ("ALJ") found that plaintiff had severe impairments consisting of diabetes, headaches, fibromyalgia, post aneurysm, and carpal tunnel syndrome.   [Administrative Record ("AR") 11].  The ALJ concluded that plaintiff was not disabled because she retained the residual functional capacity ("RFC") to perform a range of sedentary work, and therefore could perform jobs available in significant numbers in the national

1  economy. [AR17-18].

2  **Standard of Review**

3       The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial

4  evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir.

5  2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  "Substantial evidence" means "more than

6  a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir.

7  2005).  "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

8  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is

9  required to review the record as a whole and to consider evidence detracting from the decision as well as

10  evidence supporting the decision.  Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006);

11  Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than

12  one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

13  Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th

14  Cir.1999)).

15  **Discussion**

16       **Nonexamining physicians**

17       Plaintiff contends that the ALJ failed properly to consider the opinion of Ian Happer, M.D., a

18  nonexamining state agency physician. [See JS 3-6].

19       Dr. Happer concluded that plaintiff could perform sedentary work and could engage in handling and

20  fingering with the left upper extremity "frequently [sic] and non-repetitively due to" carpal tunnel

21  syndrome. [AR 174].  The ALJ said that he gave Dr. Happer's opinion "great weight" and characterized Dr.

22  Happer's limitations as consistent with the ALJ's RFC finding, which included the ability to "frequently

23  handle and finger using the left upper extremity." The ALJ did not include in his RFC finding Dr. Happer's

24  preclusion against "non-repetitive" fingering and handling.   Plaintiff argues that because "most unskilled

25  sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions," the ALJ's

26  failure explicitly to adopt Dr. Happer's limitation to non-repetitive fingering was reversible error and

27  deprives his decision of substantial support in the record. [JS 3 (alteration and emphasis omitted)(citing SSR

28  83-10)].

1    In SSR 96-9p, the Commissioner explained:

2    Most unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral

3    manual dexterity. Fine movements of small objects require use of the fingers; e.g., to pick

4    or pinch. Most unskilled sedentary jobs require good use of the hands and fingers for

5    repetitive hand-finger actions. [¶] Any *significant* manipulative limitation of an individual's

6    ability to handle and work with small objects with both hands will result in a significant

7    erosion of the unskilled sedentary occupational base. For example, example 1 in section

8    201.00(h) of appendix 2, describes an individual who has an impairment that prevents the

9    performance of any sedentary occupations that require bilateral manual dexterity (i.e., "limits

10    the individual to sedentary jobs which do not require bilateral manual dexterity"). When the

11    limitation is less significant, especially if the limitation is in the non-dominant hand, it may

12    be useful to consult a vocational resource.

13    SSR 96-9p, 1996 WL 374185, at *8 (emphasis in original).

14    The ALJ obtained a vocational expert's testimony to clarify the effect on the occupational base of

15    plaintiff's nonexertional limitations, including her fingering and handling restrictions. The ALJ's

16    hypothetical question to the vocational expert posited a limitation to occasional handling and fingering with

17    the left upper extremity. The vocational expert testified that the hypothetical person could perform the

18    unskilled, sedentary jobs of information clerk, Dictionary of Occupational Titles ("DOT") job number

19    237.367-022,  and general office clerk, DOT job number 209.562-010.

20    Relying in part on Dr. Happer's opinion, the ALJ ultimately found that plaintiff could perform

21    frequent, rather than occasional, left-sided handling and fingering.  The ability to perform an activity

22    "frequently" subsumes the ability to perform that activity "occasionally."  Therefore, the ALJ permissibly

23    relied on the vocational expert's testimony identifying jobs that a hypothetical person capable of

24    "occasional" left-sided handling and fingering could perform.

25    Even if the ALJ erroneously omitted from his RFC assessment Dr.  Happer's limitation to non-

26    repetitive handling and fingering with the left upper extremity, substantial evidence supports the ALJ's

27    finding that plaintiff can perform the alternative jobs of information clerk and general office clerk identified

28    by the vocational expert. The DOT states that the job of information clerk, job number 237.367-022,

requires occasional handling, and that fingering is an activity that is "not present" in that job.[1]  Plaintiff's RFC permits frequent (or occasional) handling on the left side, unlimited on the right. The <u>DOT</u> also states that the job of information clerk requires a "low degree" of aptitude or ability in "manual dexterity," corresponding to that possessed by the lowest 1/3 of the population, excluding the bottom ten percent.  Thus, while *most* unskilled sedentary jobs require a high degree of bilateral manual dexterity for fine and/or repetitive movements, the job of information clerk does not.  Accordingly, a limitation to non-repetitive fingering and handling would not preclude performance of that job as described in the <u>DOT</u>.  <u>See</u> <u>Pinto v. Massanari</u>, 249 F.3d 840, 845  (9th Cir. 2001)("[T]he best source for how a job is generally performed is usually the Dictionary of Occupational Titles.").

The second job identified by the vocational expert, general office clerk, <u>DOT</u> job number 209.562-010,  requires frequent fingering and handling, and therefore is within plaintiff's RFC as found by the ALJ. The job of general office clerk, like the information clerk job, requires only a "low degree" of aptitude or ability in "manual dexterity,"negating the inference that a limitation to non-repetitive handling and fingering would preclude performance of that job.

In sum, nothing in those <u>DOT</u> job descriptions supports plaintiff's contention that she could not perform those jobs if the ALJ had expressly incorporated a limitation to frequent *and non-repetitive* left-sided fingering and handling. Therefore, the ALJ's failure to include the non-repetitive limitation  in his RFC finding was harmless error, at most. <u>See</u> <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1042 (9th Cir. 2008)(holding that an error that was "inconsequential to the ultimate nondisability determination" was harmless).

**Hypothetical question**

Plaintiff contends that the ALJ's hypothetical question to the vocational expert was defective because it did not include the limitation to non-repetitive fingering and handling with the left upper extremity noted by Dr. Happer. [JS 6-8].

Hypothetical questions posed to the vocational expert must accurately describe all of the limitations

---

[1]   The Commissioner may take administrative notice of job data available in the <u>DOT</u> and other reliable sources. <u>See</u> 20 C.F.R. §§  404.1566(d), 416.966(d); <u>Massachi v. Astrue</u>, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007).

and restrictions of the claimant that are supported by substantial evidence in the record.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2006); Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).

For the reasons described above, the ALJ's omission of a limitation to non-repetitive handling and fingering was harmless error.  Accordingly, plaintiff's contention lacks merit.

**Treating physician's opinion**

Plaintiff contends that the ALJ improperly rejected the opinion of Leslie A. Stanwix, D.O. Plaintiff points to statements by Dr. Stanwix in her August 2006 and October 2006 examination reports that plaintiff was "disabled from work," and that she was submitting disability paperwork on plaintiff's behalf. [JS 9-13].

The ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting an uncontroverted treating source opinion. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record.  Batson v. Comm'r of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1148-1149 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

In the section of an August 2006 examination report devoted to plaintiff's subjective complaints and history, Dr. Stanwix noted that plaintiff "continue[s] to be disabled from work although she has been cleared for October 1st by Dr. Myers.  She has not seen a hand specialist for her carpal tunnel as yet. She follows a poor nutritional pattern. She does not exercise and is a smoker." [AR 274].  In October 2006, Dr. Stanwix noted—again in the subjective history of her examination report—that plaintiff "continues to be in significant pain," but she added that when plaintiff took Percocet in the morning and evening, "this is helpful." [AR 270].  Dr. Stanwix also noted that plaintiff said she had been "granted disability because of her carpal tunnel syndrome and chronic pain from California," and she "would like to continue this disability . . . ." [AR 270]. Dr. Stanwix diagnosed chronic pain/arthralgias, probably fibromyalgia; carpal tunnel syndrome, left side, persistent; and depression. [AR 270].  She added that a "[f]orm was filled out and will be faxed to employment development department, state of California, for continued disability." [AR 270].

The ALJ said that he had "read and considered the statements from Dr. Stanwix in which she describes the claimant [as] disabled from illnesses but does not supply specific restrictions based on

1   objective medical abnormalities." [AR 15].  The ALJ deferred instead to the opinions of Dr. Happer and Dr.

2   DeBolt, a medical expert who testified during the administrative hearing. [AR 15].

3         The ALJ did not err in evaluating Dr. Stanwix's reports.  Viewed in context, Dr. Stanwix's August

4   2006 statement that plaintiff "continues to be disabled" simply reflected plaintiff's subjective assessment

5   of her condition as told to Dr. Stanwix.  Dr. Stanwix made a point of noting that another treating doctor had

6   cleared plaintiff to return to work in two months, and that plaintiff had taken no steps to treat her left carpal

7   tunnel syndrome or to address her poor nutrition, lack of exercise, and smoking. Dr. Stanwix's reports do

8   not support the inference that she had concluded that plaintiff was, in fact, disabled.

9         Even if Dr. Stanwix's statement that plaintiff "continues to be disabled" could reasonably be

10  construed as reflecting Dr. Stanwix's opinion, the ALJ permissibly rejected it as unsupported by objective

11  findings. Dr. Stanwix found only minor abnormalities, and her diagnoses are not indicative of disability.

12  See Bayliss, 427 F.3d at 1217 (stating that "an ALJ need not accept the opinion of a doctor if that opinion

13  is brief, conclusory, and inadequately supported by clinical findings," and holding that the ALJ properly

14  rejected a treating physician's opinion that was contradicted by the doctor's treatment notes); Sample v.

15  Schweiker, 694 F.2d 639, 642-643 (9th Cir. 1982) (noting that the existence of a diagnosed disorder "is not

16  per se disabling," and that "there must be proof of the impairment's disabling severity"). Dr. Stanwix noted

17  that plaintiff exhibited some rib and abdominal tenderness, and that there were some abnormalities on

18  urinalysis.  Dr. Stanwix's assessment was right-sided flank pain, suspect renal lithiasis (kidney stones);

19  chronic lower extremity pain of undetermined etiology; left carpal tunnel; diabetes with very poor

20  compliance; hypertension; and "suspect drug seeking, narcotic seeking behavior." [AR 274]. In short,

21  contrary to plaintiff's contention, Dr. Stanwix's August 2006 report does not support the inference that

22  plaintiff is disabled, and the ALJ did not err in evaluating it.

23        Dr. Stanwix's October 2006 note indicating that plaintiff had been granted state disability benefits

24  simply reflects what plaintiff told her.  Dr. Stanwix remarked that plaintiff wanted to continue on state

25  disability because she had not yet completed a work-up with a rheumatologist for possible fibromyalgia.

26  Plaintiff had received a positive EMG report from another doctor indicating left-sided carpal tunnel

27  syndrome and had questions about "what to do with this diagnosis from this point forward." [AR 270]. Dr.

28  Stanwix made no examination findings because she did not examine plaintiff that day. [AR 270].

Nonetheless, she reported that she filled out a form "for continued disability" to be faxed to the California state employment development department. [AR 270]. That report does not appear to be included in the record.

Nowhere in her October 2006 report did Dr. Stanwix say that plaintiff was disabled or describe any work-related functional limitations. See Morgan, 169 F.3d at 600 (holding that the ALJ permissibly rejected an examining doctor's report that did not show how the claimant's symptoms translated into specific functional deficits that precluded work activity); 20 C.F.R. §§ 404.1513(d), 416.913(d) (setting forth the requirements for medical source reports); 20 C.F.R. §§ 404.1567, 416.957 (setting forth the standards for evaluating medical opinions); cf. Meanel v. Apfel, 172 F.3d 1111, 1113-1114 (9th Cir. 1999)(holding that the ALJ properly rejected a treating physician's "meager" opinion that failed to explain how the claimant's impairment affected her ability to work, and that the ALJ permissibly relied on the opinion of an examining physician who made specific findings regarding the claimant's work-related limitations).

Dr. Stanwix's references to completing a state disability form on plaintiff's behalf do not constitute a medical opinion that plaintiff is disabled for social security disability purposes. Even if Dr. Stanwix's reports are construed to contain a medical opinion of disability, the ALJ permissibly concluded that Dr. Stanwix presented no objective or clinical findings supporting such an assessment. Accordingly, plaintiff's contentions lack merit.

**Duty to develop the record**

Plaintiff contends that "because the ALJ deemed Dr. Stanwix's treating records inadequate" to support a finding of disability, "the ALJ was obligated to recontact Dr. Stanwix to seek additional information and/or clarification." [JS 15].

The ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered," even where, as here, "the claimant is represented by counsel." Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003)(quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)); see Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). A claimant, however, retains the burden of proving that he is disabled. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). The ALJ's "duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes, 276 F.3d at 459-460 (rejecting the argument that the ALJ

breached his duty to develop the record as an impermissible attempt to shift the burden of proving disability away from the claimant).

For the reasons explained above, even if Dr. Stanwix's reports are construed to contain a disability opinion, the ALJ permissibly rejected them. Plaintiff did not meet her burden to produce evidence showing that she is disabled. The record was not fatally ambiguous, and the ALJ was not obliged to recontact Dr. Stanwix. Therefore, plaintiff's contention lacks merit. See Thomas, 278 F.3d at 958 (rejecting the argument that the ALJ had a duty to recontact an evaluator whose report was "contradictory" because "the requirement for additional information is triggered only when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability," the ALJ made no finding that the treating source evidence was inadequate to make a determination, and the ALJ articulated valid reasons for discrediting the report).

## Conclusion

The Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly, the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

July 19, 2010

_____
ANDREW J. WISTRICH
United States Magistrate Judge